IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Althea Woodson, | ) | Civil Action No. 2:17-1096-RMG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER AND OPINION** |
| | ) | |
| The Boeing Company, | ) | |
| | ) | |
| Defendant. | ) | |

Before the Court is the report and recommendation ("R & R") of the Magistrate Judge (Dkt. No. 49) recommending that the Court grant Defendant's motion to strike the affidavit of Sheri Wolfe (the "Wolfe Affidavit") in whole (Dkt. No. 44) and grant Defendant's motion for summary judgment (Dkt. No. 36). For the reasons set forth below, the Court adopts in part and declines to adopt in part the R & R as the Order of the Court. The Court grants in part and denies in part Defendant's motion to strike the Wolfe Affidavit, and grants in part and denies in part Defendant's motion for summary judgment.

**I.    Background**

Althea Woodson is a former employee of Defendant Boeing Company claiming Defendant discriminated against her on the basis of her gender, race and age in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000, *et seq.*; the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 626; and 42 U.S.C. § 1981. Plaintiff alleges that she had a twenty-seven year career as Defendant's employee without performance issues, but was discriminated against when she transferred to the North Charleston facility. (Dkt. No. 1 ¶¶ 26, 28.) Plaintiff filed a charge of discrimination against Defendant with the Equal Employment Opportunity Commission in August 2016 and was issued a right to sue in March

2017. (*Id.* ¶¶ 15-16.) Plaintiff filed objections to the R & R (Dkt. No. 51) and Defendant filed a reply to the objections (Dkt. No. 52).

## II. Legal Standard

### A. Review of R & R

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight and the responsibility to make a final determination remains with the Court. *See, e.g.*, *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). Where the plaintiff objects to the R & R, the Court "makes a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.* Where the plaintiff has not objected, the Court reviews the R & R "only [to] satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72 advisory committee's note. In the absence of objections, the Court need not give any explanation for adopting the Magistrate Judge's analysis and recommendation. *See, e.g.*, *Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983) ("In the absence of objection . . . we do not believe that it requires any explanation.").

### B. Motion to Strike an Affidavit

"An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "Generally, an affidavit filed in opposition to a motion for summary judgment must present evidence in substantially the same form as if the affiant were testifying in court." *Evans v. Techs. Apps*, 80 F.3d 954, 962 (4th Cir. 1996). Evidence presented in court must be relevant pursuant to Federal

Rule of Evidence 401 and otherwise not inadmissible. "[S]ummary judgment affidavits cannot be conclusory . . . or based upon hearsay." *Id.* (internal citations omitted).

**C.  Motion for Summary Judgment**

Summary judgment is appropriate if a party "shows that there is no genuine dispute as to any material fact" and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In other words, summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). "In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party." *HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996).

The party seeking summary judgment has the initial burden of demonstrating to the Court that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, "[c]onclusory or speculative allegations do not suffice, nor does a 'mere scintilla of evidence'" in support of the non-moving party's case. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) (quoting *Phillips v. CSX Transp., Inc.*, 190 F.3d 285, 287 (4th Cir. 1999)).

### III. Discussion

#### A. Defendant's Motion to Strike the Wolfe Affidavit (Dkt. No. 44)

The Magistrate Judge recommends that the Court strike the Wolfe Affidavit (Dkt. No. 40-14) in whole because paragraphs one through thirteen are irrelevant to Plaintiff's discrimination claims and paragraphs fourteen through sixteen contain inadmissible hearsay. (Dkt. No. 12 at 16-17.)

First, paragraph one is a simple statement regarding Wolfe's relationship to the Defendant and, therefore, is not stricken. Next, regarding paragraphs two through thirteen, the Magistrate Judge correctly identified that they "relate solely to Wolfe's employment with the defendant and are, therefore, irrelevant to the issue of whether the defendant discriminated against the plaintiff." (*Id.* at 16.) *See, e.g., Taylor v. Cummins Atlantic, Inc.*, 852 F. Supp. 1279, 1284 (D.S.C. 1994) (striking other employees' affidavits making "nothing more than conclusory allegations that defendant terminated them because of their age, among other reasons").

Paragraphs fourteen through sixteen, by contrast, are relevant to Plaintiff's claims. In these paragraphs, Wolfe swears that: (i) Wolfe's supervisor, Pedro Romo, repeatedly asked Wolfe in meetings when Plaintiff would retire; (ii) Romo told Wolfe that "guys in the group didn't like working with women" in response to Wolfe recommending Plaintiff for an open position in Romo's group; and (iii) Romo assigned an underqualified man to an open position despite Wolfe requesting Plaintiff for the job. These statements are relevant to Plaintiff's claims that she was forced into retirement and discriminated against on the basis of her gender, race and age. *See* Fed. R. Evid. 401.

Paragraphs fourteen and fifteen are, moreover, admissible. A statement is "not hearsay" if it is "offered against an opposing party" and (i) "was made by the party's agent or employee (ii) on a matter within the scope of that relationship and (iii) while it existed." Fed. R. Evid.

801(d)(2)(D). The statements offered in paragraphs fourteen and fifteen were made (i) by Defendant's employee, Romo; (ii) regarding the work and assignments of his supervisee, Plaintiff; (iii) and made while Romo was employed by Defendant. Specifically, Romo was employed by Defendant as Plaintiff's direct supervisor at the time he made the statements to Wolfe (Dkt. No. 5 ¶ 27) and evaluating Plaintiff's performance, which affected her work and assignment placement, was within the scope of Romo's role at Boeing (*id.* ¶ 33). *See, e.g., Lambert v. Roechling Auto. Duncan, LLP*, No. 7:08-CV-0925-GRA-BHH, 2009 WL 2430661, at *6 (D.S.C. Aug. 6, 2009) (statements by defendant's employees constitute party admission under Rule 801(d)(2)(D) where "the evidence suggests that the recounted statements were all made by employees within the context of their employment and related to the functional scope of their agency").

Last, regarding paragraph sixteen, Wolfe attests that when she travelled to a certain location for a specific assignment, she requested Plaintiff on the team to fulfill a specific task, but Romo instead assigned an underqualified man. This statement is not so "devoid of specific facts" that it is conclusory. *Rohrbourgh v. Wyeth Labs, Inc.*, 916 F.2d 970, 975 (4th Cir. 1990) (striking affidavit exhibit to motion for summary judgment stating defendant's vaccine "caused the [ ] injuries" to plaintiff); *see also Choice v. ThyssenKrupp Indus. Servs, NA, Inc.*, No. 6:13-cv-479-TMC, 2015 WL 2364926, at *2 (D.S.C. May 18, 2015) (striking statement regarding "common" practice of unspecified "employees").

Accordingly, Defendant's motion to strike the Wolfe Affidavit is granted in part and denied in part: paragraphs two through thirteen are stricken, and paragraphs one and fourteen through sixteen are not stricken.

## B. Defendant's Motion for Summary Judgment (Dkt. No. 36)

The Court next reviews the Magistrate Judge's recommendation that the Court grant Defendant's motion for summary judgment. The Court's analysis includes consideration of paragraphs one and fourteen through sixteen of the Wolfe Affidavit.

As an initial matter, the Magistrate Judge ably determined that Defendant is entitled to summary judgment on Plaintiff's claims brought under Title VII or the ADEA based on alleged unlawful employment practices occurring prior to October 17, 2015. (Dkt. No. 12 at 20-21.) Defendant is granted summary judgment as to these claims.

### 1. Discrimination by Hostile Work Environment and Constructive Discharge

Plaintiff claims that Defendant discriminated against her on the basis of her race and age by creating a hostile work environment in violation of Title VII, Section 1981 and the ADEA. (Dkt. No. 1 ¶¶ 110-120.) "To demonstrate a [ ] hostile work environment, a plaintiff must show that there is (1) unwelcome conduct; (2) that is based on the plaintiff's . . . race [or age]; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and create and abusive work environment; and (4) which is imputable to the employer." *Boyer-Liberto v. Fontainbleau Corp.*, 786 F.3d 264, 271 (4th Cir. 2015); *see also Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 184 (4th Cir. 2001) (explaining that the elements of a hostile work environment claim "are the same under either § 1981 or Title VII). To support the third element of her claim, Plaintiff must show that "the environment would reasonably be perceived, and is perceived, as hostile or abusive," which is "judged from the perspective of a reasonable person in the plaintiff's position" by "looking at all the circumstances, which may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a

mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Boyer-Liberto*, 786 F.3d at 277 (internal quotation marks and citations omitted).

The evidence reflects that: (i) Romo inquired at three consecutive six-month performance reviews, starting in early 2015, when Plaintiff would retire (Dkt. No. 36-1 at 32, 37, 39); (ii) Romo once asked Plaintiff her age (*id.* at 62)[1]; and (iii) Romo and Mike Homer spoke to Plaintiff and her colleagues as if they were "invisible" (*id.* at 55-56, 80). The Magistrate Judge correctly identified that, when viewed in the light most favorable to Plaintiff, this evidence does not reveal remaining issues of fact regarding whether Defendant's conduct rose to the level of creating a hostile work environment. For example, although Romo's retirement inquiries were off-putting to Plaintiff (*id.* at 37) as well as repetitive—in fact, regularly posed in every meeting in which Plaintiff was organizationally-mandated to participate and where only Plaintiff and Romo were present (*id.* at 33)—there is no evidence that Romo's inquiries were so invasive or offensive as to interfere with Plaintiff's ability to do her job well. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (noting that a hostile "workplace is permeated with discriminatory intimidation, ridicule, and insult"); *Cronin v. S.C. Dep't of Corr.*, No. CA 3:11-471-MBS-SVH, 2013 WL 5315983, at *13 (D.S.C. Sept. 20, 2013) (finding that six examples of Defendant's conduct do not support finding that the alleged harassment was severe or pervasive). Similarly, Plaintiff testified that Romo generally spoke unprofessionally not just to her, but also to two Caucasian male colleagues. (*Id.* at 57-58.) Plaintiff's claim for discrimination by constructive discharge fails for the similar reasons. *See Cronin*, 2013 WL 5315983, at *6 ("A showing of a

---

[1] The Court notes that Defendant submitted as an exhibit to its summary judgment brief an eighty-page "excerpt" of Plaintiff's deposition transcript, which excludes various one-page sections of the transcript containing relevant information such as, for example, Plaintiff's answer to the question of when Romo asked her age. (Dkt. No. 36-1 at 62.)

hostile work environment 'is a necessary predicate' to establishing a hostile-environment constructive discharge claim.") (quoting *Pa. State Police v. Suders*, 542 U.S. 129, 147 (2004)).

Accordingly, Defendant is granted summary judgment as to Plaintiff's hostile work environment and constructive discharge claims.

2. **Discrimination by Disparate Treatment**

Plaintiff claims that Defendant discriminated against her by treating her disparately on the basis of her race, gender and age in violation of Title VII, Section 1981 and the ADEA. Plaintiff must demonstrate "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Md. Ct. of App.*, 626 F.3d 187, 190 (4th Cir. 2010). Here, there is no dispute that Plaintiff was a member of a protected class on the basis of her gender or race, or that Plaintiff's job performance was satisfactory (Dkt. No. 40-5); however, paragraph fifteen of the Wolfe Affidavit raises an issue as to whether Defendant treated Plaintiff differently on the basis of her gender, such as by failing to act on a recommendation that Plaintiff fill an open position because "guys in the group didn't like working with women." (Dkt. No. 40-14.) As a result, with a "view of the evidence in the light most favorable to the nonmoving party," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), Defendant's motion for summary judgment as to Plaintiff's disparate treatment claim is denied.

3. **Retaliation**

Plaintiff alleges that in response to lodging discrimination complaints with management, Defendant retaliated by giving her negative performance evaluations and creating a hostile work environment. (Dkt. No. 1 ¶¶ 99-102.) "In order to establish a prima facie case of retaliation, a plaintiff must prove three elements: (1) that she engaged in a protected activity; (2) that her

employer took an adverse employment action against her; and (3) that there was a causal link between the two events." *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405-06 (4th Cir. 2005); *see also Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 188 (4th Cir. 2004) (recognizing that the elements of a prima facie Section 1983 and Title VII retaliation claims are identical). Regarding the first element, an employee engages in protected activity when her "course of conduct *as a whole* (1) communicates to her employer a belief that the employer has engaged in . . . a form of employment discrimination . . . and (2) concerns subject matter that is actually unlawful under Title VII or that the employee reasonably believes to be unlawful." *DeMasters v. Carlion Clinic*, 796, F.3d 409, 418 (4th Cir. 2015) (emphasis in original).

Here, as the Magistrate Judge noted, the record supports that Plaintiff engaged in protected activity in February or March 2016, when Plaintiff communicated to Stephanie Lanier in their first meeting that Plaintiff felt "forced out" and into retirement. (Dkt. No. 36-1 at 42-44). However, the record also supports that Plaintiff engaged in protected activity in approximately mid-2015, when she communicated to Romo's supervisor, Mike Homer, that she had "concerns" working for Romo and she "didn't feel comfortable working in [Romo's] group" because Romo "wasn't treating [Plaintiff] right." (*Id.* at 27, 44-45, 51). Plaintiff testified that she felt Romo's retirement inquiries were Romo "trying to get me out of here" (*id.* at 37) and, therefore, when taken in the light most favorable to Plaintiff, this mid-2015 communication to Homer could reasonably be a complaint of discrimination on the basis of Plaintiff's age, just as her 2016 complaint to Lanier of feeling "forced out" is a complaint of discrimination on the basis of age.

Plaintiff alleges that Defendant retaliated by "placing her in the most hostile work environment, threatening her with a PIP, and providing her with a negative evaluation to prevent promotion." (Dkt. No. 1 ¶ 102.) The Court previously found that Romo's retirement inquiries

beginning in early 2015 did not rise to the level of creating a hostile work environment, and the record does not support that a PIP was "threatened" or negative performance evaluations were issued because of Plaintiff's conversations with Homer or Lanier. The Title VII anti-retaliation provision should be interpreted "to provide broad protection from retaliation." *Burlington N. & Santa Fe. Ry. Co. v. White*, 548 U.S. 53, 67 (2006). Nevertheless, here, the record does not support a reasonable finding that Defendant retaliated against Plaintiff "*because* the plaintiff engaged in a protected activity." *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007) (emphasis in original).

Accordingly, Defendant's motion for summary judgment as to Plaintiff's retaliation claim is granted.

## IV. Conclusion

For the foregoing reasons, the Court **ADOPTS IN PART AND DECLINES TO ADOPT IN PART** the R & R (Dkt. No. 49) as the Order of the Court. Defendant's motion to strike the Wolfe Affidavit (Dkt. No. 44) is **GRANTED IN PART AND DENIED IN PART** such that paragraphs two through thirteen are stricken, and paragraphs one and fourteen through sixteen are not stricken. Defendant's motion for summary judgment (Dkt. No. 36) is **GRANTED IN PART AND DENIED IN PART** such that Defendant is granted summary judgment on Plaintiff's claim of discrimination by creating a hostile work environment, claim of discrimination by constructive discharge, and claim of retaliation; and Defendant is denied summary judgment on Plaintiff's claim of discrimination by disparate treatment.

**AND IT IS SO ORDERED.**

_____
Richard Mark Gergel
United States District Court Judge

September 27, 2018
Charleston, South Carolina